# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:10-CR-164 |
| | ) | [2:15-CV-372] |
| TYRONE REYNOLDS, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on the "Motion to Vacate Sentence Pursuant to Title 28 U.S.C. § 2255(f)(3)" [ECF No. 312] and the "Motion for Authorization to File a Second or Successive Under 28 U.S.C. § 2255(h)(2)" [ECF No. 323], which has been construed as a motion to amend the original § 2255 motion. For the reasons set forth below, the Court DISMISSES the motion to vacate, DENIES the motion to amend as futile, and DECLINES to issue a certificate of appealability. The Clerk is DIRECTED to DISMISS the associated civil case [2:15-CV-372].

## BACKGROUND

On February 16, 2011, the Defendant, Tyrone Reynolds a/k/a "Charles Keys," "Zero" ("Reynolds"), was charged by way of a superseding indictment with interstate kidnapping in violation of 18 U.S.C. §§ 1201(a)(1) and 2 ("Count 1"), conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. § 846 ("Count 2"), and the use of a firearm during

1

and in relation to a crime of violence and during and in relation to a narcotics offense in violation of 18 U.S.C. §§ 924(c) and 2 ("Count 3").  [ECF No. 79.]  A jury found Reynolds guilty on all three counts on May 28, 2011.  [ECF No. 52.]  A sentencing hearing was held on January 4, 2012, and the Honorable Rudy Lozano sentenced Reynolds to Life imprisonment on Count 1 and two-hundred and forty (240) months imprisonment on Count 2, to be served concurrently, plus a term of seven (7) years on Count 3 to run consecutively to Counts 1 and 2.  [ECF No. 237.]

Reynolds filed a direct appeal, arguing that the Court erred in its calculation of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") by finding that: (1) he was a "leader or organizer" of the criminal activity pursuant to U.S.S.G. § 3B1.1(a); and (2) he and the other assailants made a "ransom demand" during the crime, which was used for purposes of a sentencing enhancement under U.S.S.G. § 2A4.1(b)(1).  In an opinion decided on May 8, 2013, the Court of Appeals for the Seventh Circuit upheld the leadership adjustment but reversed and remanded on the "ransom demand" issue, finding that nothing in the record suggested that the demand was made to a third party as was required to support the enhancement.  *See United States v. Reynolds*, 714 F.3d 1039, 1045–46 (7th Cir. 2013).  On July 16, 2013, Judge Lozano resentenced Reynolds to a term of three-hundred and twenty-four (324) months imprisonment on Count 1 and two-hundred and forty (240) months imprisonment on Count 2, to be served concurrently, plus a term of sixty (60) months imprisonment on Count 3, to be served consecutively to Counts 1 and 2.  [ECF No. 274.]

Reynolds filed the instant § 2255 motion on September 24, 2015.[1]  [ECF No. 312.]  In it, he argues that: (1) the Court's use of the words "ransom demand" in the jury instructions and

---

[1]  "The prison mailbox rule provides that a prisoner's notice of appeal is deemed filed at the moment the

Guideline calculations violated his due process rights because it resulted in an enhanced sentence; (2) there was insufficient evidence to support his convictions; and (3) the Court lacked jurisdiction over him because it provided the jury with an erroneous instruction regarding the interstate nexus. [ECF No. 312.] The Government filed a response in opposition on January 30, 2016. [ECF No. 320.] On August 1, 2016, the Court of Appeals for the Seventh Circuit directed the clerk to transfer a document entitled "Motion for Authorization to File a Second or Successive Under 28 U.S.C. § 2255(h)(2) Memorandum of Supporting Facts" to the Court to be treated as a motion to amend the original § 2255 motion. [ECF Nos. 322 & 323.] In it, Reynolds contends that his conviction for the use of a firearm during and in relation to a crime of violence and during and in relation to a narcotics offense in violation of 18 U.S.C. § 924(c) is void as unconstitutionally vague. [ECF No. 323.] At the Court's direction, the Government filed a response in opposition to the motion to amend on November 18, 2016. [ECF No. 325.] Reynolds has not filed a reply to either the motion to amend or the original § 2255 motion. Thus, the entire issue is ripe for adjudication.

---

prisoner places it in the prison mail system, rather than when it reaches the court clerk. The rule is justified because the pro se prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay. Although the prison mailbox rule was first applied to notices of appeal, the rule applies to all district-court filings save for exceptional situations." *Taylor v. Brown*, 787 F.3d 851, 858–59 (7th Cir. 2015) (ellipsis, brackets, internal quotation marks, and citations omitted). Here, Reynolds indicates that he deposited it into the hands of prison mailroom staff on September 24, 2015. [ECF No. 312, p. 18.]

# FACTS

In its opinion, the Court of Appeals succinctly set forth the relevant facts of the case as follows:

On an evening in October 2006, Reynolds and seven other men drove from Chicago to Gary, Indiana, to rob Glenford Russell at his home. All nine are natives of Belize. Russell, an admitted marijuana dealer, had previously lived in Chicago but moved to Gary after being robbed twice by other Belizeans. Reynolds had discovered the new location after previously following Russell home.

Reynolds's group ambushed Russell outside his house, demanding that he give them his "money and weed." Russell led Reynolds inside to a bathroom and turned over $15,000 he had hidden there on behalf of his employer, a drug lord. Reynolds believed there was more, though, and repeatedly demanded that Russell tell him where he had stashed drugs or "the rest of the money." When Russell denied having anything else, Reynolds and a cohort beat him and cut him with a knife. Reynolds and two other men then tied up Russell with duct tape and electrical cord. Over the next three hours the assailants continued to interrogate Russell about the whereabouts of more money or drugs and eventually moved him to the basement, where Reynolds and another man beat him further. In the basement Reynolds was overheard telling Russell that he used to work for Russell's employer and was still owed money.

The events took a turn after Russell hatched a plan to get out of his house. Russell testified that the assailants seemed to think he was holding out on them and that he feared he would be killed if he did not satisfy their demands. To create an opportunity for escape, he proposed to Reynolds that he could take the group to a cache of 50 pounds of marijuana being stored at a car-repair garage in Chicago. The proposal was a ploy (Russell knew there was no marijuana at the garage), but Reynolds believed him and decided that the group would travel to Chicago the next morning in three separate vehicles, including a car owned by Russell. The assailants made the trip with Russell tied up in one vehicle, but shortly before they reached the garage Russell convinced the others to untie him and let him drive his own car so that employees at the garage would not become suspicious. As he drove toward the garage (all the while being held at gunpoint), Russell flung open his car door and dove onto the pavement. The car crashed into a parked vehicle, the assailants fled, and Russell escaped.

4

All eight assailants then regrouped at Reynolds's home, where Reynolds divided up the $15,000 taken from Russell's house. He gave $650 to Tynon Thompson, who criticized the cut as unfair. Jermaine Gentle received $700 and disparaged his share as "measly." Another assailant also complained about receiving only $700 and was told by Reynolds to "shut up" because "this was his move and his name that's going to get caught." The men then went their separate ways but were later arrested after Russell reported the crime to authorities.

*Reynolds*, 714 F.3d at 1041–42.


# ANALYSIS

## A. Motion to Amend

As an initial matter, the Court must determine whether to allow Reynolds to amend his original § 2255 motion. Generally, prisoners are given "one full opportunity to seek collateral review. Part of that opportunity—part of every civil case—is an entitlement to add or drop issues while the litigation proceeds." *Vitrano v. United States*, 721 F.3d 802, 806 (7th Cir. 2013) (citing *Johnson v. United States,* 196 F.3d 802, 805 (7th Cir. 1999)). That said, the ability to amend is not unfettered, and courts should only grant leave to amend "when justice so requires." *Id*. (quoting Fed. R. Civ. P. 15(a)(2)). A court, in its discretion, may properly deny an amendment when there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment . . . ." *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)). Proposed amendments to § 2255 motions should be viewed in light of the applicable limitations on timeliness and successive petitions. *Vitrano*, 721

F.3d at 806 (*citing Suggs v. United States,* 705 F.3d 279, 285 (7th Cir. 2013)); *see also Mayle v. Felix*, 545 U.S. 644, 650 (2005) ("An amended habeas petition, we hold, does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."); *Rodriguez v. United States,* 286 F.3d 972, 980–81 (7th Cir. 2002) (discussing amendments of § 2255 motions).

As noted by the Seventh Circuit in its order transferring the motion here, because Reynolds's original § 2255 motion was still pending before the Court at the time he filed the second motion, it is not considered successive. [ECF No. 322.] There is also no evidence of undue delay, bad faith or dilatory motive on the part of Reynolds, a failure to cure previous deficiencies, or undue prejudice to the Government; therefore, the only questions remaining are whether the amendment is timely and whether it is futile. Reynolds's motion to amend seeks to challenge his 18 U.S.C. § 924(c) conviction as unconstitutionally vague in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015). As will be discussed in more detail below, the motion to amend, which was deposited into the mail on June 24, 2016,[2] was filed within one year of the *Johnson* case decided on June 26, 2015, so it is considered timely. *Id.*; *see also Riney v. United States*, No. 15-3783, 2017 WL 3426473, at *1 (7th Cir. Feb. 10, 2017) (motion to amend that was filed prior to the district court rendering a final judgment on the original § 2255 motion was

---

[2] It is not entirely clear that Reynolds complied with all the procedures necessary to invoke the protections of the prison mailbox rule. *See Hurlow v. United States*, 726 F.3d 958, 963–64 (7th Cir. 2013). However, as Reynolds certifies that he mailed a copy of the motion to the Office of the United States Attorney on June 24, 2016, the Court will take him at his word and give him the benefit of the doubt when it comes to establishing a filing date. (*See* ECF No. 323, p. 10; *but see Id*. at 12.) Doing so will not be prejudicial to the Government as, in any event, the added claim does not succeed on the merits.

timely because the new claim independently met the limitations period triggered by *Johnson*).

As to futility, because the Government maintains that the amended argument lacks legal

substance, the Court will proceed to consider the merits of the additional claim along with the

original claims below.

**B.  28 U.S.C. § 2255**

Relief under 28 U.S.C. § 2255 is reserved for "extraordinary situations."  *Prewitt v.*

*United States*, 83 F.3d 812, 816 (7th Cir. 1996).  In order to proceed on a motion pursuant to §

2255, a federal prisoner must show that the district court sentenced him in violation of the

Constitution or laws of the United States, or that the sentence was in excess of the maximum

authorized by law, or is otherwise subject to collateral attack.  *Id.*  A § 2255 motion is neither a

substitute for nor a recapitulation of a direct appeal.  *Id.*; *Belford v. United States*, 975 F.2d 310,

313 (7th Cir. 1992), overruled on other grounds by *Castellanos v. United States*, 26 F.3d 717

(7th Cir. 1994).  As a result:

> [T]here are three types of issues that a section 2255 motion cannot
> raise: (1) issues that were raised on direct appeal, absent a showing
> of changed circumstances; (2) nonconstitutional issues that could
> have been but were not raised on direct appeal; and (3) constitutional
> issues that were not raised on direct appeal, unless the section 2255
> petitioner demonstrates cause for the procedural default as well as
> actual prejudice from the failure to appeal.

*Belford*, 975 F.2d at 313; *see also McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016).

Additionally, aside from demonstrating "cause" and "prejudice" from the failure to raise

constitutional errors on direct appeal, a § 2255 movant may alternatively pursue such errors after

demonstrating that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice. *Johnson v. Loftus*, 518 F.3d 453, 455–56 (7th Cir. 2008).

Section 2255 contains a one year statute of limitations which runs from the latest of:

> (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f); *see also United States v. Woods*, 169 F.3d 1077, 1078 (7th Cir. 1999). The timeliness of each claim asserted in a § 2255 motion must be assessed separately. *Davis v. United States*, 817 F.3d 319, 327–28 (7th Cir. 2016).

In this case, Reynolds was re-sentenced on July 16, 2013, and the judgment and commitment order was entered on July 18, 2013. He had fourteen days to file a notice of appeal, or until August 1, 2013. Reynolds did not appeal his new sentence; therefore, his conviction became final on August 1, 2013. *See Clarke v. United Sates*, 703 F.3d 1098, 1100 (7th Cir. 2013) (stating that "the sentence did not become final until the deadline for filing a notice of appeal expired"). The instant § 2255 motion and subsequent motion to amend were not filed until September 24, 2015, and June 24, 2016,[3] respectively, both well beyond one year of the date his conviction became final. Reynolds does not argue that government action prevented him from filing a timely motion, nor does he argue that there are facts supporting his claims that

---

[3] See footnotes 1 and 2 above for details regarding the prison mailbox rule.

could not have been discovered earlier through the exercise of due diligence. Accordingly, Reynolds's claims may only proceed if they were filed within one year of the date on which the right he is asserting was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.

In his motions, Reynolds states that he is seeking relief under 18 U.S.C. § 2255(f) pursuant to *Johnson v. United States*, 135 S. Ct. 2551 (2015). In *Johnson*, the Supreme Court of the United States analyzed the Armed Career Criminal Act ("ACCA")[4] to determine whether the "residual clause" is void for vagueness. As Justice Scalia noted:

---

[4]  The ACCA provides, in relevant part:

   (1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).
   (2) As used in this subsection--
       (A) the term 'serious drug offense' means--
           (i) an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46, for which a maximum term of imprisonment of ten years or more is prescribed by law; or
           (ii) an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law;
       (B) the term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that--
           (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
           (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .*

> Under the Armed Career Criminal Act of 1984, a defendant convicted of being a felon in possession of a firearm faces more severe punishment if he has three or more previous convictions for a "violent felony," a term defined to include any felony that "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. §924(e)(2)(B). We must decide whether this part of the definition of a violent felony survives the Constitution's prohibition of vague criminal laws.

*Id.* at 2555.  Ultimately, the Supreme Court held that "imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process." *Id.* at 2563.  It therefore overruled its prior decision in *Sykes v. United States*, 564 U.S. 1 (2011), and held that the residual clause of the definition of violent felony in the ACCA was unconstitutionally vague. *Johnson,* 135 S. Ct. at 2563.  The *Johnson* decision is retroactive on both direct appeal and collateral review. *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016); *Price v. United States*, 795 F.3d 731, 732 (7th Cir. 2015); *see also Dodd v. United States*, 545 U.S. 353, 357 (2005) (holding that one-year limitation period runs from the ruling recognizing the right asserted rather than the date the right was found to be retroactive).

Since *Johnson* was decided, the landscape of its applicability has continued to be refined. For example, in 2016, the Seventh Circuit held that, in light of *Johnson*, the residual clause in 18 U.S.C. § 924(c)(3)(B)[5] is also unconstitutionally vague. *United States v. Cardena*, 842 F.3d 959, 996 (7th Cir. 2016).[6]  Later, in 2017, the Supreme Court resolved a conflict among the circuits

---

18 U.S.C. § 924(e) (emphasis added to indicate the phrasing known as the residual clause).

[5]  Section 924(c) prohibits the use, carrying, and possession of a firearm "during and in relation to any crime of violence or drug trafficking crime."  18 U.S.C. § 924(c)(1)(A).  As part of its statutory definition, the term "crime of violence" includes any felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  18 U.S.C. § 924(c)(3).

[6]  However, in April of 2018, the Solicitor General of the Department of Justice requested that the

and held that, because the advisory Guidelines do not mandate specific sentencing ranges, they are not subject to void-for-vagueness challenges pursuant to the Due Process Clause. *Beckles v. United States*, 137 S. Ct. 886, 892 (2017). Specifically, the Court concluded that the residual clause found in U.S.S.G. § 4B1.2(a)(2) at the time the defendant was sentenced,[7] which made him eligible for a sentencing enhancement as a "career offender" and contained identical language to that of the residual clause found in the ACCA, was not void for vagueness. *Id*. That said, the Seventh Circuit recently concluded that *Beckles* applies only to advisory Guidelines and does not extend to mandatory sentencing rules, making the residual clause of the Guidelines unconstitutionally vague as applied to defendants who were sentenced prior to the Supreme

Seventh Circuit reconsider its position on whether the definition of "crime of violence" in § 924(c)(3)(B) is unconstitutionally vague in light of the Supreme Court's ruling in *Sessions v. Dimaya,* 584 U.S. ——, 138 S. Ct. 1204 (2018), which suggests the possibility that § 924(c)(3)(B) "may be amenable to a narrowing construction under the canon of constitutional avoidance . . . [and] construed in a manner that preserves its constitutionality." See the Supplemental Brief for the United States found in *United States v. Jenkins*, Nos. 17-97 & 17-651, 2018 WL 1891590, *1-2 (U.S. Apr. 19, 2018). On May 14, 2018, the Solicitor General's request was granted, and several Seventh Circuit cases were remanded for reconsideration in light of *Dimaya*. *See, e.g.*, *United States v. Jenkins*, --- S. Ct. ----, 2018 WL 2186183 (U.S. May 14, 2018).

[7] The 2006 version of the Guidelines was in effect when the defendant in *Beckles* was sentenced. *Beckles*, 137 S. Ct. at 890. At that time, a defendant was classified as a "career offender" under the Guidelines if: (1) he was at least eighteen years old; (2) the instant offense was considered a "crime of violence" or "controlled substance offense;" and (3) he had at least two prior felony convictions of those same types of offenses. U.S.S.G. § 4B1.1(a) (Nov. 2006). The Guidelines went on to define a "crime of violence" as an offense punishable by a term of imprisonment greater than one year that "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." U.S.S.G. § 4B1.2(a) (Nov. 2006) (emphasis added to indicate the phrasing known as the residual clause). The 2011 version of the Guidelines, under which Reynolds was sentenced and then re-sentenced, is substantively identical with regard to these sections.

Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). *Cross v. United States*, Nos.

17-2282 and 17-2724, --- F.3d ---, 2018 WL 2730774, at *1 (7th Cir. June 7, 2018).

In any event, what *Johnson* did not do, however, was affect the constitutionality of

provisions of § 924 or the Guidelines that are unrelated to the residual clause. As explained by

the Seventh Circuit, this concept is often misunderstood by defendants seeking relief under

*Johnson*:

> A flurry of filings in the district courts after *Price*, which became a
> blizzard after *Welch*, depends on a belief that *Johnson* reopens all
> questions about the proper classification of prior convictions under
> the Guidelines and the Armed Career Criminal Act. But the sole
> holding of *Johnson* is that the residual clause is invalid. *Johnson*
> does not affect the first portion of clause (ii) ('burglary, arson, or
> extortion, [or] use of explosives') and does not have anything to do
> with the proper classification of drug offenses or the operation of §
> 924(e)(2)(B)(i), known as the elements clause, which classifies as a
> violent felony any crime punishable by a year or more in prison that
> "has as an element the use, attempted use, or threatened use of
> physical force against the person of another". The Guidelines
> contain the same language. U.S.S.G. § 4B1.2(a)(1).

*Stanley v. United States*, 827 F.3d 562, 564 (7th Cir. 2016); *see also United States v. Jenkins*,

849 F.3d 390, 392–393 (7th Cir. 2017) (distinguishing the residual clause of § 924(c)(3)(B) from

the force clause of § 924(c)(3)(A) and finding that there is "no question as to the constitutionality

of the Force Clause"), reh'g denied (Apr. 20, 2017), cert. denied, 137 S. Ct. 2280 (2017), and

cert. granted, judgment vacated, 86 USLW 3569 (U.S. May 14, 2018).[8]

Although Reynolds attempts to pigeon-hole all of his claims into the *Johnson* framework

in order to receive the benefits of the extended limitations period of § 2255(f)(3), this strategy

---

[8]   As noted in footnote six above, *Jenkins* was remanded for further consideration of § 924(c)(3)(B) in
light of *Sessions v. Dimaya,* 584 U.S. ——, 138 S.Ct. 1204 (2018).

fails.  The timeliness of each claim asserted in a § 2255 motion must be assessed separately,

*Davis*, 817 F.3d at 327–28, and those claims unaffected by *Johnson* are untimely.  *See, e.g.*,

*Stanley*, 827 F.3d at 565–66 (conviction unaffected by *Johnson* does not trigger a "fresh

window" to file a collateral attack).  Thus, the Court will address each claim in turn.


1. ***The Phrase "Ransom Demand" Under U.S.S.G. § 2A4.1 as Applied to Reynolds's***
   ***Kidnapping Conviction and Sentence***

In his original motion, Reynolds appears to contend that *Johnson* applies to this claim

because the phrase "ransom demand" in the kidnapping section of the Guidelines was used to

unconstitutionally enhance his sentence, contributed to the verdict when it was used as part of the

jury instructions, and ultimately impermissibly created the basis for his federal prosecution, all in

violation of his due process rights.  To trigger the application of *Johnson*, Reynolds attempts to

analogize § 2A4.1 of the Guidelines (the "Kidnapping, Abduction, Unlawful Restraint" section

which was used to establish his sentencing range for his kidnapping conviction under 18 U.S.C.

§ 1201(a)(1)) to § 4B1.1 of the Guidelines (the "Career Offender" section).  Section 2A4.1

provides a significant sentencing enhancement when "a ransom demand or a demand upon the

government was made."  U.S.S.G. § 2A4.1(b)(1).  Reynolds argues that because § 2A4.1 of the

Guidelines paraphrases the Hostage Taking Act found at 18 U.S.C. § 1203 (the "HTA"),[9] and §

4B1.1 of the Guidelines paraphrases the ACCA—part of which was determined to be

---

[9] In relevant part, the HTA provides penalties for any individual who "seizes or detains and threatens to kill, to injure, or to continue to detain another person in order to compel a third person or a governmental organization to do or abstain from doing any act as an explicit or implicit condition for the release of the person detained, or attempts or conspires to do so . . . ."  18 U.S.C. § 1203(a).

unconstitutionally vague in *Johnson*—§ 2A4.1 of the Guidelines must also be unconstitutionally vague. Reynolds asks the Court to review his "<u>conviction</u> and <u>sentence</u> obtained with the use of the HTA enhancement" because "although the [HTA] was not in the indictment, it was applied to the jury instructions and guidelines in order to enhance petitioner's sentence beyond Life imprisonment." [ECF No. 312, pp. 4, 11.]

Reynolds's argument suffers from several fatal flaws. First, with regard to this claim, the Court notes that Reynolds was not sentenced as an armed career criminal under the ACCA, § 4B1.1 of the Guidelines, or pursuant to any language similar to the residual clause that was determined to be unconstitutionally vague in *Johnson*. That language, namely "or otherwise involves conduct that presents a serious potential risk of physical injury to another," is not even tangentially related to the phrasing of § 2A4.1 of the Guidelines or the HTA as Reynolds implies. Moreover, the Supreme Court has since clarified that *Johnson* does not apply to the discretionary Guidelines, so Reynolds's argument that § 2A4.1 of the Guidelines somehow triggers *Johnson* is foreclosed on that ground as well. *See Beckles*, 137 S. Ct. at 890 (2017) ("[T]he advisory Guidelines are not subject to vagueness challenges under the Due Process Clause."). Simply put, the Court's ruling in *Johnson* is inapplicable to Reynolds's claim, and it does not permit him to bring a motion under § 2255 that would otherwise be untimely. *See Stanley*, 827 F.3d at 565–66 (conviction unaffected by *Johnson* does not trigger a "fresh window" to file a collateral attack). As such, it must be dismissed.

Additionally, as pointed out by the Government, the claim has been procedurally defaulted because Reynolds did not raise it on direct appeal and has not shown cause for failing

to do so nor prejudice resulting from it.[10]  *See, e.g.*, *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016).  And, although Reynolds maintains that "it has always been [his] primary issue and number one contention that he is 'actually innocent' of committing a felony offense against the laws of the United States," he has not presented any reliable evidence—new or otherwise not previously considered—that would rise to the level required to open the narrow "actual innocence" gateway.  *See Gladney v. Pollard*, 799 F.3d 889, 896 (7th Cir. 2015) (defendant must show that "in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt").

Moreover, the claim would fail even if the Court considered it on the merits.  Reynolds repeatedly asserts that his sentence was enhanced via the phrase "ransom demand" in § 2A4.1 of the Guidelines.  Reynolds, however, is mistaken.  The Seventh Circuit reversed the original finding that a ransom demand was made, and the Court re-sentenced Reynolds upon remand *without* the application of the § 2A4.1(b)(1) enhancement.  [*See* ECF No. 267.]  Similarly, although Reynolds claims that his conviction was obtained with the "use" of the HTA, he was actually convicted of kidnapping under 18 U.S.C. § 1201(a)(1), a statute separate and distinct from the HTA.  Finally, Reynolds insists that the jury instructions were "extremely prejudicial" to his defense because they "contributed to the verdict."  However, Reynolds does not point to any specific instruction or explain his argument in any meaningful way.  The Court has reviewed the jury instructions, and the phrase "ransom demand" is not used in any instruction.  While

---

[10]  Reynolds successfully appealed the application of the ransom demand enhancement pursuant to § 2A4.1 of the Guidelines; however, Reynolds did not file an appeal as to his resentencing, nor did he ever make arguments regarding the constitutionality of the kidnapping statute, the HTA, or any allegedly erroneous jury instructions on appeal.

instruction nineteen includes the wording "holds for ransom" as part of its restatement of the kidnapping statute, it does not state or imply that a ransom *demand* must also occur to establish the offense.  [ECF No. 155, p. 23.]  In fact, the subsequent instructions make it clear that the Government simply needed to prove that "the defendant kidnapped the person for some purpose or benefit" and that the jury "need not unanimously agree on why the defendant kidnapped the person in question, so long as you each find that he had some purpose or derived some benefit from the kidnapping."  [ECF No. 155, pp. 24–25.]  The jury was never instructed that a "ransom demand—which has been defined (in the context of the § 2A4.1 enhancement) as being a demand made by the kidnapper in order to compel a third party to act—was required in order to find Reynolds guilty of kidnapping under 18 U.S.C. § 1201(a)(1).  *See Reynolds*, 714 F.3d at 1045.  As noted by the Seventh Circuit, the trial testimony sufficiently established that Reynolds's group had demanded money and/or drugs from the victim in exchange for his release.  *Id*. at 1045–46.  That is enough to show they had an intended purpose of or benefit related to the kidnapping; the fact that those demands were not conveyed to a third person does nothing to negate the necessary purpose/benefit element of interstate kidnapping.  For these reasons, Reynold's argument fails.


2.  ***Sufficiency of the Evidence and Erroneous Jury Instruction Related to Interstate Commerce***

Reynolds also contends that there was insufficient evidence to convict him of any federal crime and that an erroneous "interstate jury instruction provided by the district court foreclosed any jury determination on the jurisdictional element."  [ECF No. 312, p. 15.]  Reynolds

16

intertwines these two claims by phrasing them both using jurisdictional language. Specifically, he argues that the Government failed to introduce evidence that he participated in transporting the kidnapping victim across state lines against his will or that the victim's illegal drug dealing business was interstate in nature, thus depriving the Court of jurisdiction over him. He further argues that the Court erred when it instructed the jury that the interstate element was established as a matter of law if the object of the conspiracy "was to obtain illegal drugs," and, consequently, "neither side presented evidence directly addressing this case's jurisdictional issue we now consider." [ECF No. 312, pp. 15–16.] According to Reynolds, "the Government offered little or no direct evidence supporting the jurisdictional element – apart from the mere fact that the robbery targeted drug trafficking proceeds." [ECF No. 312, p. 16.]

As an initial and ultimately dispositive matter, the Court notes that Reynolds does not even attempt to address the timeliness issue with regard to these claims. It is clear that *Johnson* is inapplicable, and Reynolds does not present any other basis for triggering an extended limitations period—via a right that was newly recognized by the Supreme Court or otherwise. Thus, the claims are untimely and must be dismissed.

Moreover, as pointed out by the Government, while some jurisdictional challenges go "to the very power of the State to bring the defendant into court to answer the charge brought against him," Reynolds's claims do not fall within that scope. *United States v. Lacey*, 569 F.3d 319, 323 (7th Cir. 2009) (citing *Blackledge v. Perry,* 417 U.S. 21, 30 (1974)). Rather,

> [a] jurisdictional element is simply an element of a federal crime. It is jurisdictional only in the shorthand sense that without that interstate commerce nexus, there can be no federal crime . . . . It is not jurisdictional in the sense that it affects a court's subject matter jurisdiction, *i.e.,* a court's constitutional or statutory power to adjudicate a case, here authorized by 18 U.S.C. § 3231. As an

offense element, it does not implicate the court's power to hear a
case and can be waived . . . .

*Id*. (internal quotation marks, brackets, and citations omitted). Reynolds did not raise these

claims—which are based entirely on the trial record—on appeal, and he has not explained why

he failed to do so.[11] As a result, they have been procedurally defaulted. *See Lanier v. United*

*States*, 220 F.3d 833, 842 (7th Cir), cert. denied, 531 U S. 930 (2000) (a defendant cannot raise

nonconstitutional issues in a § 2255 motion that he failed to raise on direct appeal regardless of

cause and prejudice).

### 3.  *Validity of the 18 U.S.C. § 924(c) Conviction and Sentence Pursuant to* Johnson

Finally, in his motion to amend, Reynolds argues that the Supreme Court's holding in

*Johnson* renders both his kidnapping conviction under 18 U.S.C. § 1201(a)(1) and his firearm

conviction and sentence under 18 U.S.C. § 924(c) void as unconstitutionally vague. [ECF No.

---

[11] Reynolds does attach a letter from the Office of the Indiana Secretary of State [ECF No. 312, p. 19]
dated August 15, 2014, that was apparently received in response to his request for inspection and copying
of the public records of Glenford Russell (the kidnapping victim) and Claudius Bowen. Reynolds argues
that this letter is relevant because it shows that neither Glenford Russell nor Claudius Bowen owned or
operated a "marijuana business" between 2006 and 2012 that was involved in interstate commerce with
the State of Indiana. [ECF No. 312, p. 15.] He argues that, without this evidence, the Government failed
to prove that Glenford Russell's marijuana and related proceeds—the subject of the kidnappers'
demands—originated from out of state, so the jurisdictional interstate commerce element was not met.
     Aside from the absurdity of assuming an illegal drug dealer would register his marijuana
business, Reynolds is mistaken as to the effect of the substantive law as well. The Supreme Court has
made it clear that evidence of an attempt to rob a marijuana dealer of his drugs and money is sufficient to
satisfy the requisite interstate commerce element. *See Taylor v. United States*, 136 S. Ct. 2074, 2077
(2016) (finding, in the context of a Hobbs Act robbery, "that the Commerce Clause gives Congress
authority to regulate the national market for marijuana, including the authority to proscribe the purely
intrastate production, possession, and sale of this controlled substance. Because Congress may regulate
these intrastate activities based on their aggregate effect on interstate commerce, it follows that Congress
may also regulate intrastate drug *theft*.") (emphasis in original).

323.]  Reynolds contends that it is clear that his § 924(c) conviction was impermissibly "based on that statute's residual clause because his underlying offense—a Hobbs Act robbery[12]—does not satisfy the force clause."  [ECF No. 323, p. 4.]  The Government correctly points out that Reynold's *Johnson* argument only applies to his § 924(c) conviction, not to the predicate crime of kidnapping.  It also argues that the claim is untimely because Reynolds was not sentenced under the ACCA as required to escape the one-year limitation period via *Johnson*, and, even if the claim was timely, it is without merit considering Reynold's conviction can be sustained on grounds unrelated to either statute's residual clause.

As detailed above, in addition to the residual clause of the ACCA, the law as it currently stands in this Circuit holds that the residual clause of § 924(c)(3)(B) is also unconstitutionally vague in light of *Johnson*.  *See Cardena*, 842 F.3d at 996.  Thus, to the extent that Reynolds is bringing an argument on this ground, it is timely.  However, the Government is correct that the claim is ultimately without merit.  To be convicted of a violation of § 924(c), one must use, carry, or possess a firearm "during and in relation to any crime of violence *or* drug trafficking crime."  18 U.S.C. § 924(c) (emphasis added).  The term "drug trafficking crime" is defined as a felony that is "punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46."  18 U.S.C. § 924(c)(2).  The term "crime of violence" is defined as a felony that:

> (A) has as an element the use, attempted use, or threatened use of
> physical force against the person or property of another, or

---

[12] Reynolds is mistaken.  He was not charged with or convicted of a Hobbs Act robbery in violation 18 U.S.C. § 1951(a).  The underlying offenses at issue in this case are interstate kidnapping pursuant to 18 U.S.C. § 1201(a) and conspiracy to possess with intent to distribute marijuana pursuant to 21 U.S.C. § 846.

(B) that by its nature, involves a substantial risk that physical force
against the person or property of another may be used in the course
of committing the offense.

18 U.S.C. § 924(c)(3).  Subsection A is often referred to as the force clause or the elements

clause, while, like its strikingly similar counterpart of the ACCA, subsection B is referred to as

the residual clause.

It is true that, in *Jenkins*, the Seventh Circuit determined that interstate kidnapping pursuant

to 18 U.S.C. § 1201(a) is not a crime of violence under § 924(c) because: (1) the kidnapping

statute does not require the use of force as an element, and (2) the residual clause has been

determined to be unconstitutionally vague.  *Jenkins*, 849 F.3d at 393–94.[13]  However, the court

was careful to point out that "there is no question as to the constitutionality" of the force clause

in general; it simply does not apply to the crime of kidnapping.  *Id*. at 393.  Similarly, the court

has maintained that *Johnson* does not affect the classification of drug offenses or the elements

clause of § 924(e)(2)(B)(i)).  *See Stanley*, 827 F.3d at 564.  Therefore, it is no surprise that when

confronted with a situation in which a defendant argued his § 924(c) conviction should be

vacated in light of *Johnson* because his predicate Hobbs Act conspiracy conviction could be

deemed a crime of violence only under the residual clause of § 924(c)(3)(B), the court declined

to disturb the defendant's firearm conviction and sentence, relying on the fact that the he had

"admitted to a substantive drug offense that made him eligible for a conviction under § 924(c),

no matter how the Hobbs Act conspiracy is best classified (a subject that [the court did] not

address)."  *Davila v. United States*, 843 F.3d 729, 730–31 (7th Cir. 2016).  Thus, it is clear that

---

[13] As noted in footnote 6, *Jenkins* has been remanded for reconsideration in light of *Dimaya* so that the
court may reconsider its position on whether the residual clause of § 924(c)(3)(B) is unconstitutionally
vague.

*Johnson* has no effect on a § 924(c) conviction that relies on an underlying drug trafficking crime for support.

In the instant case, the § 924(c) charge, Count 3, references the two predicate offenses that Reynolds was also charged with; he was alleged to have "knowingly and intentionally use[d] a firearm during and in relation to . . . interstate kidnapping, as described in Count 1 of the indictment; and conspiracy to possess with intent to distribute marijuana, as described in Count 2 of the indictment." [ECF No. 79, p. 4.] As is evidenced by the verdict forms, Reynolds was convicted of each of those offenses, plus the jury specifically found on a special verdict form that he had knowingly and intentionally used a firearm during and in relation to *both* interstate kidnapping and conspiracy to possess with intent to distribute marijuana. [ECF No. 157, p. 4.] There is no question that Reynold's § 924(c) conviction can be sustained on the basis of his conviction under Count 2, a felony that is punishable under the Controlled Substances Act, regardless of the fact that interstate kidnapping is not considered a crime of violence. *See Davila*, 843 F.3d at 730-31; see also *United States v. Hare*, 820 F.3d 93, 106 (4th Cir. 2016), cert. denied, 137 S. Ct. 224 (2016), reh'g denied, 137 S. Ct. 460 (2016) (finding that because the special verdict form showed the defendant was guilty of possession of a firearm in furtherance of a Hobbs Act robbery *and* a drug trafficking crime, his § 924(c) conviction could be sustained even assuming the Hobbs Act robbery was not a crime of violence). Thus, because Reynolds's argument with regard to his § 924(c) claim lacks merit, the amendment is denied as futile. *See Vitrano v. United States*, 721 F.3d 802, 809 (7th Cir. 2013) (holding district court's denial of leave to amend § 2255 motion was "justified based on the futility of the proposed amendment").

## C. Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a defendant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the motion should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 475 (U.S. 2000) (internal quotation marks and citation omitted). As set forth in detail above, Reynolds has not stated any grounds for relief under § 2255. The Court finds no basis for a determination that reasonable jurists would find this decision debatable or incorrect or that the issues deserve encouragement to proceed further. Therefore, the Court declines to issue a certificate of appealability.

The Court advises Reynolds that, pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, when the district judge denies a certificate of appealability, the applicant may request a circuit judge to issue the certificate. The Court further advises the Reynolds that if he wishes to appeal, he must file a notice of appeal within 60 days after the judgment or order appealed from is entered. Fed. R. App. P. 4(a); *Guyton v. United States*, 453 F.3d 425, 427 (7th Cir. 2006).

**CONCLUSION**

For the above reasons, the Court DISMISSES the "Motion to Vacate Sentence Pursuant to Title 28 U.S.C. § 2255(f)(3)" [ECF No. 312], DENIES the "Motion for Authorization to File a Second or Successive Under 28 U.S.C. § 2255(h)(2)" [ECF No. 323] as futile, and DECLINES to issue a Certificate of Appealability. The Clerk is DIRECTED to DISMISS the associated civil case [2:15-CV-372].

SO ORDERED on August 27, 2018.

 s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT